UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JAMES A. FROST | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil No. 12-1460 |
| CATHOLIC UNIVERSITY OF AMERICA, et al. | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

*Pro se* plaintiff, James A. Frost seeks damages for alleged wrongs committed by Catholic University, John H. Garvey, Veryl V. Miles, Donald Wuerl, Allen H. Vigneron, Barry C. Knestout, Thomasine N. Johnson and Vernon H. Ennels, Sr. The defendants now move to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure; the plaintiff opposes the motion. Defendant Vigneron also moves for dismissal under Rule 12(b)(2) for lack of personal jurisdiction; Frost opposes the motion. Upon consideration of the filings and the relevant law, defendants' motions to dismiss are GRANTED.

### I. BACKGROUND

Frost's allegations stem from two different incidents at the Catholic University Columbus School of Law on July 20, 2011 and September 7, 2011 respectively. Frost often used the law school for legal research. Am. Compl. ¶ 126. On July 20, 2011, Frost entered the law school where security officers employed by Catholic University detained him for ten minutes while they photocopied his Maryland State Bar Association (MSBA) ID. Am. Compl. ¶ 133. Frost alleges those actions were tortious and violated his constitutional rights. Am. Compl. ¶ 129.

On September 7, 2011, the plaintiff entered the law school and an unidentified individual stopped and showed him a "Campus Information Alert." Am. Compl. ¶ 154. The alert also had a copy of Frost's MSBA ID. Am. Compl. ¶ 156. The individual told Frost that the paper said that he was "banned" from the law library. Am. Compl. ¶ 159. Several unidentified individuals and defendant Ennels restrained Frost and prohibited him from leaving the law school. Am. Compl. ¶ 162. Defendant Ennels allegedly shoved Frost against the wall and said, "We're arresting you." Am. Compl. ¶ 166. Unidentified individuals detained Frost for approximately 33 minutes while they waited for the Metropolitan Police Department. Am. Compl. ¶¶ 169, 177. The police officers arrived but did not arrest Frost. Am. Compl. ¶ 182.

Frost brings several claims against the defendants. The defendants include: Donald Wuerl, the archbishop of Washington and chancellor of The Catholic University of America; Allen Vigneron, the archbishop of Detroit and chairman of the board of trustees of The Catholic University; Berry Knestout auxiliary bishop of Washington and chief of staff for the archdiocese of Washington; John Garvey, President of The Catholic University; Veryl Miles, Dean of The Catholic University Law School; Thomasine Johnson, chief of the University's police force; and Vernon Ennels, a District of Columbia security officer employed by Catholic University. The plaintiff's complaint is unclear as to whether all of the claims are for both the July 20th incident and the September 7th incident. Frost also does not clearly articulate against whom he brings each claim. As the Court understands Frost's complaint, he brings a 42 U.S.C. § 1983 claim against all the defendants for a violation of his Fourth and Fifth Amendment rights in relation to the September 7th incident. Am. Compl. ¶¶ 1, 191-93. Frost also asserts in relation to the July 20th and September 7th incidents claims against all the defendants under District of Columbia

tort law, including false arrest and imprisonment claims, battery and civil conspiracy. Finally, Frost brings defamation claims against defendants Garvey, Miles and Catholic University.

## II. LEGAL STANDARD

### A. Motion to Dismiss Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss is appropriate when the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a failure occurs when the complaint is so factually deficient that the plaintiff's claim for relief is not plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Asking for plausible grounds to infer [a right to relief] does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the right to relief]." *Id.* at 556. Though facts in a complaint need not be detailed, Rule 8 "demands more than an unadorned, the-defendant-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all factual statements as true when deciding a Rule 12(b)(6) motion to dismiss. *Id.* at 678. However, conclusory legal allegations devoid of any factual support do not enjoy the same presumption of truth. *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### B. *Pro se* Standard

"A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erikson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). Nevertheless, a *pro se*

3

complaint "must present a claim on which the Court can grant relief." *Utterback v. Geithner*, 754 F. Supp. 2d 52, 54 (D.D.C. 2010) (quoting *Chandler v. Roche*, 215 F. Supp. 2d 166, 168 (D.D.C. 2002)).

### C. Personal Jurisdiction Standard

On a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of establishing the court's personal jurisdiction over a defendant. *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1092 (D.C.Cir. 2008). To meet this burden, a plaintiff must allege "specific facts on which personal jurisdiction can be based; it cannot rely on conclusory allegations." *Moore v. Motz*, 437 F. Supp. 2d 88, 90–91 (D.D.C. 2006). And unlike a motion to dismiss for failure to state a claim, the Court need not confine itself to only the allegations in the complaint, but "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). Nor must a court treat as true all of plaintiff's allegations when determining whether personal jurisdiction exists. *Fuentes- Fernandez & Co. v. Caballero & Castellanos, PL*, 770 F. Supp. 2d 277, 279 (D.D.C. 2011). At the same time, any factual discrepancies with regard to the evidence itself must be resolved in favor of the plaintiff, *Dean v. Walker*, 756 F. Supp. 2d 100, 102 (D.D.C. 2010), and in the absence of an evidentiary hearing, the plaintiff need only make a prima facie showing that the Court has personal jurisdiction. *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005).

## III. ANALYSIS

### A. The Court Dismisses All Claims against Defendant Vigneron for Lack of Personal Jurisdiction

To assert personal jurisdiction over a non-resident defendant, service of process must be authorized by statute and must comport with the Due Process Clause of the Fourteenth

Amendment. *Cohane v. Arpeja-California, Inc.*, 385 A.2d 153, 158 (D.C. 1978), *cert. denied* 439 U.S. 980. Under Federal Rules of Civil Procedure 4(k)(1)(A) the Court establishes personal jurisdiction through serving a summons to a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Since the District of Columbia's long-arm statute has been held to extend as far as the Due Process Clause allows, *Mouzavires v. Baxter*, 434 A.2d 988 (D.C. 1981)(en banc), *cert. denied*, 455 U.S. 1006, personal jurisdiction exists when the defendant has purposely established minimum contacts with the forum state and when the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102 (1987) (citations omitted). Plaintiffs may discharge the requirements of purposeful availment by "showing that all the requirements of the Long Arm statute have been met," but "[m]ere conclusory statements . . . will not suffice." *Jones v. City of Buffalo*, 901 F. Supp. 19, 21 (D.D.C. 1994). The imposition of such a burden on plaintiffs exempts personal jurisdiction analysis from the general rule that all allegations must be taken as true for the purposes of ruling on a motion to dismiss. *See United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000). Indeed, courts may consider extrinsic evidence in disposing of a motion to dismiss for lack of personal jurisdiction. *See id.*

The D.C. Long-Arm Statute provides in relevant part that

> a District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's: (1) transacting any business in the District of Columbia; . . . (3) causing tortious injury in the District of Columbia by an act of omission in the District of Columbia; (4) causing tortious injury in the District of Columbia by an act or omission outside of the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

5

D.C. CODE §13-423(a). Jurisdiction based soley on this provision is specific: "only a claim for relief arising from acts enumerated in this section may be asserted against [the defendant]." *Id*. 13-423(b). The defendant Vigneron lives and works in Detroit, Michigan. *See* Mot. Def. Vigneron Dismiss Pl's. Am. Compl. 8. He is not domiciled in and does not carry out or maintain regular business activity within the District of Columbia. *See id*.

Defendant Vigneron is the archbishop of Detroit and chairman of the Board of Trustees of The Catholic University of America. Am. Compl. ¶ 10. Frost alleges that defendant Vigneron "has been at all times pertinent to this case . . . chancellor of the university." Am. Compl. ¶ 10. Furthermore, the plaintiff asserts that "[l]ast year and at other times relevant to this proceeding defendant Allen H. Vigneron transacted business of The Catholic University of America in Washington, D.C., not in his capacity as Roman Catholic archbishop of Detroit but in his capacity as chairman of the defendant university's trustees;" and the court gains its jurisdiction from that action (original emphasis omitted) Pl.'s Opp'n to Mot. On Def. Vigneron's Behalf Dismiss His Am. Compl.

However, when the allegations do not detail that nonresident defendant's contacts with the forum state are for the purpose of transacting business as an individual, as opposed to as an officer of a corporation, then "sections (a)(1) and (a)(4) of the Long-Arm Statute are not available to the plaintiff as a basis for jurisdiction." *Quinto v. Legal Times of Washington, Inc.*, 506 F. Supp. 554, 558 (D.D.C. 1981). And section (a)(3) does not apply because Frost has not alledged a single action by defendant Vigneron in the District of Columbia. Therefore, Frost's allegations against defendant Vigneron in his capacity as Chairman of The Catholic University's

Board of Trustees do not establish personal jurisdiction over defendant Vigernon. The plaintiff's claims against defendant Vigneron are DISMISSED.[1]

### B. 42 U.S.C. §1983 Violation of Fourth and Fifth Amendment Rights

#### 1. Action Under Color of State Law

To establish a claim under 42 U.S.C. § 1983, the plaintiff must show that the defendants acted " under the color of state or D.C. law" to deprive the plaintiff of a "right secured by the Constitution of the United States." *Edwards v. Okie Dokie*, 473 F. Supp. 2d 31, 40 (2007). Frost alleges that defendant Ennels and defendant Johnson are District of Columbia security officers appointed by the Mayor under DC ST §5-129.02. *See* Am. Compl. ¶ 19-22. A special police officer acts under the color of state law when he invokes state authority through words or actions. *Limpuangthip v. United States*, 932 A.2d 1137, 1144 (D.C. 2007). He is an agent of the state when he uses his commissioned power to arrest. *Id.* at 1143. Frost states that on September 7th defendant Ennels orally invoked his arrest power. Am. Compl. ¶ 166. Therefore, the Court would likely consider defendant Ennels a state actor under 42 U.S.C. § 1983. However, Frost did not assert that defendant Johnson invoked the state's authority or any facts that suggest that Johnson was involved in Frost's detention.

Frost also alleges a 42 U.S.C. §1983 claim against the other defendants for the September 7th incident. Am. Compl. ¶ 193. However, Frost merely asserts that they were "acting under the color of state law" without properly supporting facts. Am. Compl. ¶ 193. Furthermore, for Frost to have a valid claim against the defendant University, he would need to assert that some University policy or regulation violated his constitutional rights. Municipalities cannot be held liable under §1983 under a *respondeat superior* theory. *Monell v. Dep't of Social Svcs.*, 436 U.S.

---

[1] Even if the Court had personal jurisdiction, the Court would likely dismiss for failure to state a claim as discussed in more detail later in this opinion.

7

658, 691 (1978). Rather, there must be an allegation that a specific policy violated the individual's constitutional rights. *Id.* For the purpose of employer liability under §1983, some courts have applied the same limitations to private institutions, such as universities, where they "employ quasi-state actors." *Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 62-63 (D.D.C. 2007) (citing cases from the Second, Fourth, Seventh and Eighth Circuits). Furthermore, administrators must be "final policymakers" and have ordered or caused the depravation of the plaintiff's rights. *See id*. At 63. Even assuming this to be the law in our circuit, Frost has not alleged any facts to show that the University had a specific policy that infringed on the plaintiff's rights or that administrators, such as defendants Wuerl, Knestout, Garvey and Miles, ordered or caused the depravation of Frost's rights. The only defendant that the Court could find as a state actor under §1983 is Ennels. Therefore, the Court likely cannot find defendants Wuerl, Knestout, Garvey, Miles, Johnson, or Catholic University to have acted under color of state law and their motions to dismiss are GRANTED.[2]

### 2. Fourth and Fifth Amendment Violations

The Fourth amendment's prohibition against unreasonable seizures includes "seizure" of the person. *California v. Hodari*, 111 S.Ct. 1547, 1549 (1991). The amendment applies to "seizures" that encompass a short detention where the individual's freedom to walk away is restrained, even without subsequent arrest. *See Brown v. Texas*, 443 U.S. 47, 47 (1979) (citing *Davis v. Mississippi*, 394 U.S. 721 (1969)). A seizure of a person occurs when a reasonable person would have perceived that he was not free to go under the circumstances. *California v. Hodari D.*, 499 U.S. 621, 628 (1991). The reasonableness of the seizure is determined through

---

[2] If the Court were to have personal jurisdiction over defendant Vigneron, the same logic applied to the other administrators would apply to him.

an objective test of either probable cause or reasonable suspicion. *See Delaware v. Prouse*, 499 S.Ct. 1391, 1396 (1979). Probable cause to seize a person exists where "the facts and circumstances" within a law enforcement officer's knowledge "were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense." *Beck v. Ohio*, 85 S.Ct. 223, 225 (1964). Probable cause is a "common sense" determination, which turns on the 'practical considerations of everyday life." *United States v. Gilliam*, 167 F.3d 628, 633 (D.C. Cir. 1999) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1964)). However, "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972).

Frost alleges that defendant Ennels violated his Fourth and Fifth amendment rights. Am. Compl. ¶¶ 191-92. Frost alleges that he was physically detained and did not believe that he was free to leave. Am. Compl. ¶¶ 169-73. Frost presents enough facts to survive a 12(b)(6) motion on the issue of whether he was seized under the fourth amendment.

However, Frost also alleges that he had been informed on September 7, 2011 that there was a "Campus Information Alert" that consisted of a photocopy of his Maryland Bar Identification card and a statement that he was banned from law school premises. Am. Compl. ¶¶ 153-59. Defendant Ennels and other security officers detained Frost under the suspicion of trespassing. Am. Compl. ¶ 167. Although, Frost does allege that Ennels did not have probable cause to detain him under DC law for trespassing because he intended to leave the building. Frost states enough facts that a court could find that Ennels and the security officers that detained Frost had probable cause to do so. Am. Compl. ¶ 168. A reasonable person in those officers' positions could conclude from the Campus Information Alert stating that Frost was banned that

9

he was trespassing on University property. Further, an officer, such as Ennels, does not need to have enough information to convict Frost of trespassing; just enough to have probable cause that he was trespassing. *See Adams v. Williams*, 407 U.S. at 149. Therefore, the Court could conclude from Frost's facts that defendant Ennels did not violate Frost's Fourth amendment when Ennels seized him because Ennels had probable cause for Frost's detention.

The plaintiff also alleges violation of his Fifth Amendment rights by defendant Ennels. Am. Compl. ¶ 192. However, the Fifth Amendment protects an individual from interference of his life, liberty or property without due process of law, the right to be free from detention from a state actor without probable cause is protected by the Fourth Amendment, not the Fifth. *See Baker v. McCollan*, 443 U.S. 137, 142 (1979). The plaintiff claims that University agents detained him for 33 minutes.[3] Am. Compl. ¶169. Therefore, the plaintiff has not shown deprivation of his Fifth Amendment rights. Defendant Ennel's motion to dismiss the plaintiff's §1983 claim for violation of his Fourth and Fifth Amendment rights on September 7th is GRANTED.

## C. The Court Declines to Exercise Supplemental Jurisdiction

Frost's remaining claims for both the July 20th and September 7th incidents presence in federal court rests on supplemental jurisdiction. Under 28 U.S.C. § 1367(a) a Federal court may exercise supplemental jurisdiction over claims properly appended to a claim falling within its original jurisdiction. However, this Court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Accordingly, as Frost's § 1983 claim has been dismissed, the Court declines jurisdiction over the remaining claims.

---

[3] Frost's complaint again is unclear as to specifically who detained him. The Court assumes that Frost includes defendant Ennels in his general statement "the defendant university's agents" because Ennels allegedly originally detained Frost. Am. Compl. ¶169.

10

## IV. CONCLUSION

Based on the aforementioned reasoning, the Court shall GRANT the defendants' motion to dismiss the claims against defendant Vigneron for lack of personal jurisdiction. The Court shall also GRANT the defendants' motion to dismiss the 42 U.S.C. § 1983 claims for Fourth and Fifth Amendment violations while acting under the color of state law for defendants Wuerl, Knestout, Catholic University, Garvey, Miles, Johnson and Ennels. The Court declines to exercise jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(c).

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, U.S. District Judge, on August 15, 2013.